```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF SOUTH DAKOTA

In re:                              )   Bankr. No. 05-30023
                                    )   Chapter 7
LLOYD CURTIS JOHNSON                )
                                    )
              Debtor.               )

CHERYL REED                         )   Adv. No. 05-3004
         Plaintiff,                 )
                                    )   DECISION RE:  COMPLAINT TO
-vs-                                )   DETERMINE DISCHARGEABILITY
                                    )
LLOYD CURTIS JOHNSON                )
         Defendant.                 )
```

The matter before the Court is Plaintiff Cheryl Reed's Complaint to Determine Dischargeability of Debt. This is a core proceeding under 28 U.S.C. § 157(b)(2). This Decision and subsequent orders shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, Plaintiff will be given a nondischargeable judgment for the unpaid balance from the MBNA credit card account debt incurred by Defendant-Debtor L. Curtis Johnson.

I.

Following a trial, the record provided the following material facts. Cheryl Reed and L. Curtis "Curt" Johnson dated, beginning in 2001. Reed lived in Pierre. Johnson attended school in Watertown and made frequent trips to Pierre.

While Johnson was attending school in Watertown in 2001, he needed repairs to his vehicle. Johnson asked Reed for financial assistance. By agreement between Johnson and Reed, Reed's MBNA credit card was used to pay the repair bill of between $300 to

$500.  Johnson said he had possession of the MBNA card from that time; Reed said she personally presented the card to the repair shop.  Reed gave Johnson the statements so that he could make the payments.  Reed said the initial credit card statements just reflected this unpaid bill and some interest.  Later in 2001, she learned the amount due on the credit card account had increased to over $4,000.  Reed called Johnson in Watertown.  Johnson told Reed he used checks that were mailed with her credit card statements to pay some of his student loans.  She told him she did not want to see him any more.  Johnson promptly traveled back to Pierre and promised Reed he would pay the bill right away.  Reed decided to give Johnson a second chance.

Reed cut up the card and thought she had cancelled the account, though the account actually stayed open.  Johnson made payments on the credit card debt.  Reed did not recall seeing any of the statements Johnson paid.  Johnson and his daughter moved in with Reed in Pierre after Johnson finished school in Watertown.

Reed became concerned about the MBNA credit card account again in late January or early February 2004.  She called the company.  MBNA told her over $10,000 was owed on the account.  Johnson took the telephone from her and hung it up.  Johnson again told Reed he had been using checks on the account that came with the statements and he had signed her name to the checks.  Johnson said the new debt was due to a drug addiction and he promptly checked himself

into a treatment facility in Rapid City. Reed told Johnson to move out and she directed him to pay the bill. On February 13, 2004, Reed rented a post office box so her mail would no longer be delivered to her home.

Soon after learning about the increased debt on the MBNA account, Reed called the credit card company again and directed them to close the account. In the next statement she received from MBNA, the account balance was around $15,000. The increase was due to checks that had not yet been cashed when she called MBNA in late January or early February 2004. Reed asked MBNA to provide copies of all the transactions and all the checks that had been cashed on this account as far back as it could, which was one year. MBNA provided her with copies of five checks. These checks totaled $10,750, though the credit card bill was around $15,000, apparently due to earlier transactions and interest. Reed did not sign any of these checks.

Reed reported the matter to the Pierre Police Department and completed a written statement. Eventually, Reed decided not to pursue the matter criminally since she felt Johnson's daughter would be better off if Johnson were not in jail.

In March 2004, Johnson signed a brief statement that he would pay the MBNA credit card debt within two weeks. Reed received $4,000 from Johnson in late April 2004 and she applied it to the account. She received another $1,250 from Johnson on May 18, 2004,

which she also applied to the MBNA account.

Another agreement with a date line of April 2004 was prepared for Reed's signature. It said the credit card account balance was $12,270.21. Reed did not sign it.

By letter dated April 6, 2004, MBNA advised Reed her fraud claim had been denied because she had "provided access to [the] credit card account and/or account information." MBNA also advised her she was liable for the balance on the account. Reed obtained a second letter from MBNA dated April 13, 2004, that advised her the account had been closed and a new account created. Reed claims Johnson tore up this letter. MBNA wrote an identical letter to Reed dated April 29, 2004.

According to Carroll Clausen, the cashier of American State Bank ("Bank"), a check for $1,000.00 on Cheryl Reed's MBNA credit card account was cashed at the Bank on December 4, 2003. The check was made payable to Curtis Johnson. Several similar checks to Johnson on this account were cashed in the next few weeks: $2,000.00 on December 8, 2003; $1,250.00 on December 29, 2003; $1,500.00 on January 5, 2004; and $5,000.00 on January 29, 2004. MBNA contacted American State Bank by fax in April 2004 and alerted the Bank the $5,000 check may be returned to the Bank as a forgery. The Bank did not honor MBNA's request for reimbursement. However, Clausen did contact Johnson about the matter. Clausen, Judy Weisgram (another Bank employee), and Johnson discussed the $5,000

check in person at the Bank on April 5, 2004. Johnson told them Reed had authorized him to use the credit card. The Bank's agents cautioned him about the serious allegations against him. The Bank took no further action after Johnson later informed Weisgram by telephone that he and Reed were dealing with the matter through a civil proceeding. MBNA also later informed Clausen that Reed and Johnson were handling the matter civilly.

Reed contacted the Bank by telephone on the last day of March or the first day of April 2004. Clausen said Reed was quite distraught about checks her former boyfriend (Johnson) had cashed or deposited at the Bank. Clausen was unable to give Reed any information about the account into which the deposits were made because the account was owned by Johnson. Clausen, however, did advise the Bank's tellers by e-mail to be careful about taking any more checks for deposit from Johnson.

Mail carrier Amy Welch, a former relative of Reed's, said she delivered mail to 1121 North Poplar, where both Reed and Johnson had lived. She said she would sometimes see Johnson around the home when she delivered mail, usually between 2:00 p.m. and 3:00 p.m. Sometimes she would see Johnson in the home's driveway getting mail from the mailbox a short time after she delivered it. Welch confirmed Reed used a post office box rather than home delivery for a time while Johnson continued to receive mail at the Poplar address. Welch could not recall exact dates when this

occurred.

Cheryl Reed and her former husband, Stan Reed, had about five conversations during the "past year"[1] in which Reed complained Johnson had used a credit card without her permission. Cheryl Reed also discussed with Stan Reed what she was doing to resolve the situation. Stan Reed found Cheryl Reed's statements about her problems with Johnson credible.

Pierre police officer Mark Broer first met Cheryl Reed when he was dispatched to her home. She wanted to know how to get Johnson to remove his personal property from the Poplar house. About ten days later, Reed made a written statement to the Pierre Police Department regarding alleged credit card fraud by Johnson. Though the report is undated, Office Broer said it was received in February or the first part of March 2004, and the affidavits were attached within a month of the original report. In the report, Reed said Johnson used checks on her credit card account without her permission. Reed and Office Broer had subsequent discussions about the matter, including a discussion that MBNA had denied Reed's fraud claim by letter dated April 6, 2004. During these discussions, Officer Broer said Reed was distraught about the situation and was noticeably shaking when she came to the police station to make the written statement. Office Broer found Reed's

---

[1] It was unclear from the record to which year Stan Reed was referring.

-7-

account of the situation truthful. He did not interview Johnson or anyone at the Bank. Office Broer said the matter was not referred for criminal prosecution because Reed later reported to the police that Johnson had sold some personal property and had given her the proceeds; thus, he determined the situation was now being handled as a civil, rather than criminal, matter.

Johnson and Reed both signed an agreement dated October 12, 2004. It provided:

> I Curt Johnson will pay off the new transferred balance in a reasonable amount of time. This is the balance of the MBNA account # 5490995315600277, account I put charges on. It was transferred to Bank of America account # 1700403014275944. The amount that was transferred is [$]6,878.99.

On October 14, 2004, Reed transferred the balance on the MBNA credit card debt to a Bank of America account with a temporary zero interest rate. Reed accepted payments on the debt from Johnson until Johnson filed a Chapter 7 petition in bankruptcy on March 29, 2005. Reed never made any other charges to the MBNA or Bank of America accounts; only Johnson's debts were reflected in the accounts. Reed also made several payments on the subject debt after Debtor filed bankruptcy. Her check ledgers indicate almost monthly payments between April 2005 and February 2006, which totaled $536.21.

Johnson stated he had permission to use Reed's MBNA credit card account beginning August 1, 2001. He said the parties agreed

anything he put on the account was his responsibility. Johnson said he did not move out of the house on Poplar until late March 2004, which was after Reed started using a post office box for her mail. Johnson said he did not remove any credit card statements from her mail. Johnson said he and Reed continued to date after the dispute arose regarding his use of the MBNA credit card account checks. He said Reed claimed he used the credit card account fraudulently only after they stopped seeing each other.

II.

The party opposing the discharge of a particular debt must meet their burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). The statutory exceptions to discharge are narrowly construed. *Werner v. Hofmann,* 5 F.3d 1170, 1172 (8th Cir. 1993).

In her Complaint, Reed sought relief under 11 U.S.C. § 523(a)(2)(A). Under this Code provision, a debt for money, property, services, or an extension or renewal of credit is excepted from discharge to the extent is was obtained by "false pretenses, a false representation, or actual fraud, *other than* a statement respecting the debtor's or an insider's financial condition." As interpreted by case law, the party opposing the dischargeability of a debt under § 523(a)(2)(A) must show:

1. the debtor made a representation;
2. at the time made, the debtor knew the representation to

       be false;

3.   the representations were made with the intention and purpose of deceiving the creditor;

4.   the creditor justifiably relied on the representation; and

5.   the creditor sustained a loss as a proximate result of the representation having been made.

*Burt v. Maurer (In re Maurer)*, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); *see Field v. Mans*, 116 S.Ct. 437 (1995)(discussion of justifiable reliance); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987); *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340 (8th Cir. 1987); *Universal Bank v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000); *see Alport v. Ritter (In re Alport)*, 144 F.3d 1163, 1166-67 (8th Cir. 1998)(application of § 523(a)(2)(A)).

Because Johnson signed Reed's name to her MBNA credit card account checks and presented the checks to the Bank for deposit or cash, the fraudulent representation Johnson made was to the Bank, not Reed. There was also no justifiable reliance by Reed on these forged credit card account checks. Accordingly, the circumstances presented do not establish a cause of action under § 523(a)(2)(A) since elements (3) and (4) listed above are missing.

Reed is also unable to argue Johnson's unfulfilled promises to repay her for the MBNA debt constitute a debt that is nondischargeable under § 523(a)(2)(A). The debt arising from

Johnson's unauthorized use of the credit card account checks was incurred before those promises were made. Thus, Reed cannot establish element (5) listed above. Moreover, Johnson's promise to pay was not a false representation of a present or past fact, especially where he did make several payments on the debt. *Gadtke v Bren (In re Bren)*, 284 B.R. 681, 690 (Bankr. D. Minn. 2002).

Reed did not plead under any alternative subsection of §523(a). Reed also did not make a motion to amend her Complaint at trial. Accordingly, the legal issue presented is whether by implied consent the parties tried any other nondischargeability subsection of § 523(a).

The procedure to amend pleadings to conform to the evidence is established by Federal Rule of Civil Procedure Rule 15(b), which is made applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7015. "The intent of rule 15(b) is 'to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Bahr v. Nett (In re Nett)*, 70 B.R. 868, 872 (Bankr. W.D. Wis. 1987)(quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)(quoted in *Waltner v. Waltner (In re Waltner)*, 271 B.R. 170, 176-77(Bankr. W.D. Mo. 2001))). Rule 15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they *shall be* treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to

> raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Fed.R.Civ.P. 15(b)(emphasis added). If consent is found, the rule makes mandatory recognition of the issue not formally pled. *Id*. *See IES Industries, Inc. v. United States*, 349 F.3d 574, 577 (8th Cir. 2003). Further, as expressly stated in the rule, the motion to amend may be made even after judgment.[2]

Implied consent, obviously, is more difficult to establish than express consent; with implied consent, there is a demanding standard. *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 590 (8th Cir. 2003). Implied consent is found, however, when '"the parties recognized that an issue not presented by the pleadings had entered the case at trial."' *Pummill v. Greensfedler, Hemker & Gale (In re Richards & Conover Steel,Co.)*, 267 B.R. 602, 610 (B.A.P. 8th Cir. 2001)(quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE (2d ed. 1990) § 1493 (cite therein omitted)). It is not often allowed, however, after the close of evidence since the opposing party may be deprived of a

---

[2] A motion for leave to amend under Fed.R.Civ.P. 15(a), which is made applicable here under Fed.R.Bankr.P. 7015, is granted freely "'when justice so requires.'" *United States ex rel. Joshi v. St. Lukes Hospital, Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)(quoting Rule 15(a)). Denial, however, may be justified for undue delay, bad faith by the moving party, futility of the amendment, or unfair prejudice to the non moving party. *Id*. at 557-58 (quoting therein *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 936 (8th Cir. 2001)).

Case: 05-03004   Document: 33   Filed: 05/30/06   Page 12 of 15

-12-

fair opportunity to defend or offer additional evidence. *Triad Electric & Controls, Inc. v. Power Systems Engineering*, 117 F.3d 180, 192 (5th Cir. 1997). The questions to be asked are did the opposing party have a fair opportunity to defend and would he have presented additional evidence had he known sooner the substance of the amendment. *Richards & Conover,* 267 B.R. at 610 (quotes and cites therein). Leave should not be granted when it will prejudice the non moving party. *Triad Electric,* 117 F.3d at 192. Moreover, implied consent should not be lightly inferred under Rule 15 (b). *Id.* at 193 (cited with approval in *South Dakota Farm Bureau*, 340 F.3d at 590)."'[S]uch inferences are to be viewed on a case-by-case basis and in light of the notice demands of procedural due process.'" *Id.* at 193-94 (quoting *Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 422 (5th Cir. 1981)).

Sometimes, implied consent may also be found where evidence to support the new claim is introduced without objection. *Richards & Conover*, 267 B.R. at 610. There is, however, no bright-line rule that implied consent cannot be found if the evidence supporting the new claim is also relevant to an issue properly pled. *IES Industries*, 349 F.2d at 579. The "inevitability" that the evidence may overlap does not foreclose amendment under Rule 15(b). *Id.*

III.

The facts presented indicate Johnson's debt to Reed arose from larceny. He took from Reed, without her permission, the MBNA

credit card account checks, the account checks were for Reed's use, and Johnson used the checks for his own benefit. *American Legion Dept. of Missouri, Inc. v. Hanover Ins. Co.*, 286 B.R. 729, 736 (E.D. Mo. 2002)(elements of larceny under 11 U.S.C. § 523(a)(4)). The evidence presented established only that Johnson had permission to charge the one auto repair bill to Reed's MBNA account. Though Reed also allowed Johnson to take possession of the credit card statements throughout much of their personal relationship so he could pay the bill, Reed did not authorize Johnson to either possess or use for his own benefit the blank checks that came with the statements. *Werner v. Hofmann*, 5 F.3d at 1172 (larceny, not embezzlement, occurs when the debtor's possession of the creditor's property was unlawful). Accordingly, if larceny was tried by the implied consent of the parties, Reed's claim against Johnson is nondischargeable under 11 U.S.C. § 523(a)(4).

The Court finds larceny under § 523(a)(4) was tried by implied consent under Rule 15(b). Both parties presented testimonial evidence on whether Johnson's possession and use of the credit card checks were authorized by Reed. There is no indication Johnson had or could produce any additional evidence regarding his use of these checks had larceny under § 523(a)(4) been pled by Reed in her Complaint. Thus, a delay in the trial to allow him additional time to defend a larceny claim would not have changed the record, and no prejudice to Johnson can be found.

Finally, the relation back doctrine allows the larceny claim to relate back to the date Reed file her original complaint. Fed.R.Bankr.P. 7015; Fed.R.Civ.P. 15(c)(2); *Mandacina v. United States*, 328 F.3d 995, 999-1000 (8th Cir. 2003). The larceny claim arose out of the same conduct, transaction, or occurrence as the fraud claim originally pled by Reed. *Id*. at 1000. Thus, the larceny claim does not run afoul of Fed.R.Bankr.P. 4007(c), especially since the rule is no longer considered to govern subject matter jurisdiction. *See Kontrick v. Ryan*, 540 U.S. 443, 454-59 (2004) (Fed.R.Bankr.P. 4004(a) [counterpart to Rule 4007(c)] is a claim processing rule); *KBHS Broadcasting Co. v. Sanders (In re Bozeman)*, 226 B.R. 627, 630-31 (B.A.P. 8th Cir. 1998)(Rule 15(c) may not deprive a defendant of the protection of a statute of limitations).

Once Reed formally moves to amend her Complaint to conform to the evidence, an order will be entered awarding Reed a nondischargeable judgment against Johnson. The amount of the nondischargeable judgment will be the unpaid balance of the MBNA credit card account on the date of Johnson's petition, $6,397.93.[3] Pre-judgment interest will be allowed to the extent provided by South Dakota law from the date of Reed's Complaint, *Amtrust, Inc.*

---

[3] According to Reed's March 2005 credit card statement, the sum due on March 26, 2005, was $6,393.25 and the daily interest rate was 0.02439%. Thus, the sum due March 29, 2005, was $6,397.93.

-15-

*v. Larson*, 388 F.3d 594, 598 (8th Cir. 2004); *Alford v. Cassel (In re Cassel)*, 322 B.R. 363, 377 (Bankr. C.D. Ill. 2005); *see Williams v. Kemp (In re Kemp)*, 242 B.R. 178, 182 (B.A.P. 8th Cir. 1999)(an award of pre-judgment interest is a discretionary factual issue), so long as the award approximates the interest costs Reed has incurred during that time. *See Baldi v. Lynch, et al. (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 599 (Bankr. N.D. Ill. 2005)(pre-judgment interest should make the party whole, not result in a windfall)(cites therein). Post-judgment interest will be allowed at the rate provided by 28 U.S.C. § 1961. Reed will also be allowed as costs the adversary proceeding filing fee of $150.00. Reed shall bear her own attorney's fees.

Dated this 30th day of May, 2006.

BY THE COURT:

Irvin N. Hoyt
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Charles L. Nail, Jr.
Clerk, U.S. Bankruptcy Court
District of South Dakota